UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| SHAWN KOST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:15-cv-00056-RLY-WGH |
| | ) | |
| PNC BANK, NATIONAL ASSOCIATION, | ) ) ) | |
| Defendant. | | |

**ENTRY ON DEFENDANT'S MOTION TO
COMPEL AND DISMISS, AND FOR COSTS**

**I. Introduction**

Plaintiff, Shawn Kost, filed this defamation and negligence suit against Defendant, PNC Bank, National Association, for damages arising out of allegedly false statements made by Defendant regarding Plaintiff's termination of employment.  This matter comes before the court on Defendant's Motion to Compel and Dismiss, and for Costs.  Defendant seeks to dismiss the suit under Federal Rule of Civil Procedure 12(b)(3) for improper venue and compel Plaintiff to arbitrate this matter.  For the reasons set forth below, the court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion.

**II. Background**

In his Complaint, Plaintiff contends that he was employed by Defendant as an investment advisor and, upon his termination, Defendant reported inaccurate information about the reason for his discharge to the Financial Industry Regulatory Authority ("FINRA").  FINRA is a non-governmental, regulatory agency that oversees brokerage

1

investment firms and their licensed employees. According to Plaintiff, this incorrect information is accessible to the general public via FINRA's Broker Check service. As a result, Defendant's statements have damaged his reputation in the industry and prevented him from securing employment.

While Defendant disagrees that it was Plaintiff's employer, Defendant explains that every firm and broker that markets securities to the public in the United States must be licensed and registered by FINRA. Those associated with FINRA must then adhere to the rules and regulations promulgated by the agency. Specifically, FINRA requires licensed employees, such as Plaintiff, to complete a Form U4 Application for Securities Industry Registration or Transfer ("Form U4") at the beginning of their employment with brokerage investment firms. It is undisputed that Plaintiff completed a Form U4 on or about August 8, 2011. The Form U4 signed by Plaintiff provides (emphasis original),

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my *firm*, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the *SROS* indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent *jurisdiction*.

FINRA is one of the self-regulatory organizations ("SROs") listed in Section 4 with which Plaintiff registered. FINRA Rule 13200(a) provides, "Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among: Members; Members and Associated Persons; or Associated Persons." FINRA defines a "member" as "any broker or dealer admitted to membership in FINRA." FINRA Rule

2

13100. It defines an "associated person" as "a person associated with a member, as that term is defined in paragraph (r)." *Id.* A "person associated with a member" includes "[a] natural person who is registered or has applied for registration under the Rules of FINRA." *Id.*

In addition to the Form U4, Plaintiff also signed "Disclosure to Associated Persons when Signing Form U-4" ("Disclosure"), which states,

> You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer, or any other person, that is required to be arbitrated under the roles of the self-regulatory organizations with which you are registering. This means you are giving up the right to sue a member, customer, or another associated person in court, including the right to a trail [sic] by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

Defendant asserts that in order to remain in good standing with FINRA, members are required to report the reason for any employee's discharge to the agency via the Form U5 Uniform Termination Notice For Securities Industry Registration ("Form U5"). In this case, a Form U5 was filed shortly after Plaintiff's discharge. Plaintiff's Form U5 contains the allegedly defamatory remarks that are the focus of this lawsuit. FINRA copied the information from the Form U5 and made it available online via its Broker Check service.

**III. Discussion**

**A. Agreements to Arbitrate**

In considering whether the parties agreed to arbitrate this matter, the court applies "ordinary state-law principles that govern the formation of contracts." *Druco Rests., Inc. v. Steak N Shake Enters.*, 765 F.3d 776, 781 (7th Cir. 2014). Indiana and federal courts

alike recognize that arbitration provisions are valid and enforceable. *Tender Loving Care Mgmt., Inc. v. Sherls*, 14 N.E.3d 67, 71 (Ind. Ct. App. 2014) ("Both Indiana and federal law recognize a strong public policy favoring enforcement of arbitration agreements."). When an Indiana court construes an arbitration agreement, "every doubt is to be resolved in favor of arbitration." *Nightingale Home Healthcare, Inc. v. Helmuth*, 15 N.E.3d 1080, 1085 (Ind. Ct. App. 2014). *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

### B. Compelling Arbitration

Section 4 of the Federal Arbitration Act ("FAA")[1], 9 U.S.C. § 1 *et seq.*, authorizes a federal court to "make an order directing the parties to proceed to arbitration" upon a showing that "the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. 4. The Seventh Circuit has interpreted this statute to mean that in order to compel arbitration, "a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich American Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). This court is required to order arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an

---

[1] Defendant argues that the Form U4 is governed by the FAA, but Plaintiff does not respond to this point. As Defendant notes, several courts, including the U.S. Supreme Court, have implicitly held that the FAA does govern the Form U4. *See e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 367 (7th Cir. 1999); *Estabrook v. Piper Jaffray Cos.*, 492 F. Supp. 2d 922, 925 (N.D. Ill. 2007). Therefore, this court need not revisit that issue.

4

interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

The three elements outlined by *Zurich American Insurance Company* are mostly undisputed. First, the court finds that there is a valid agreement to arbitrate. The Form U4 unambiguously provides that Plaintiff agreed to "arbitrate any dispute, claim or controversy that may arise between [him] and [his] firm . . . ." Plaintiff fully acknowledges that he signed this form and that it contains an arbitration provision. Furthermore, the parties do not dispute that this is a valid contract under Indiana principles of contract law. *See McIntire v. Franklin Twp. Cmty. Sch. Corp.*, 15 N.E.3d 131, 134 (Ind. Ct. App. 2014) (stating that the "basic elements of a contract" are "an offer, acceptance, a manifestation of mutual assent, and consideration"). Importantly though, the Form U4 only mandates arbitration when it is required under the rules of a specific SRO. To be sure, FINRA Rule 13200(a) requires arbitration in this instance. First, Plaintiff's claim "arises out of the business activities" of a member because this case concerns the official procedure followed by Plaintiff's firm after Plaintiff was discharged. Second, this dispute is between an associated person (Plaintiff) and a member (Plaintiff's firm).

Rather than contest the validity of these arbitration provisions, Plaintiff argues that he entered into an agreement to arbitrate with PNC Investments LLC ("PNCI"), not Defendant. Plaintiff then reminds the court that this suit is against Defendant (allegedly his former employer), not PNCI. Consequently, Defendant, a non-signatory party to the Form U4, cannot seek to enforce PNCI's arbitration agreement in this action. This

5

argument is a non-starter.  As Defendant demonstrates, PNCI, a subsidiary of Defendant, was actually Plaintiff's employer.  Sean Stamper (a Compliance Senior Associate with PNCI) and David Snow (an Assistant Vice President and Senior Employee Relations Investigator with Defendant) both state, through their declarations, that Plaintiff was employed by PNCI.  (Filing No. 6-1, Declaration of Sean Stamper at ¶ 6; Filing No. 6-2, Declaration of David Snow at ¶ 6).  Plaintiff's offer letter from PNCI reinforces this conclusion.  The letter, dated July 27, 2011, states, "[W]e are pleased to confirm your verbal acceptance of the terms of employment extended to you to join PNC Investments as a Full Time Financial Advisor starting on August 8, 2011."  (Filing No. 6-2, Offer Letter).  The Form U4 and Form U5 both list PNCI as Plaintiff's firm.  Moreover, the Broker Check report-the principal piece of evidence relied upon by Plaintiff in his Complaint-lists PNCI as Plaintiff's employer.  Plaintiff's subjective beliefs that Defendant was his employer based upon the entity listed on his compensation checks and his reliance on Defendant's website for employment policies are not enough to refute the overwhelming evidence to the contrary.

Furthermore, this court cannot ignore that Plaintiff's Complaint is based entirely upon PNCI's communication to FINRA regarding Plaintiff's termination via the Form U5.  Plaintiff seemingly sought to avoid arbitration by naming Defendant, rather than PNCI, in his lawsuit.  Accepting Plaintiff's arguments and permitting his lawsuit to move forward would strike directly against the express intent of the parties, as reflected by the unambiguous language in the Form U4.  This is impermissible under Indiana law.  *See Singleton v. Fifth Third Bank*, 977 N.E.2d 958, 968 (Ind. Ct. App. 2012) ("When

6

interpreting a contract, our paramount goal is to ascertain and effectuate the intent of the parties."); *Ballew v. Town of Clarksville*, 683 N.E.2d 636, 640 (Ind. Ct. App. 1997) ("A court, even in equity, cannot make a new contract for the parties, or add new terms thereto."). As the Sixth Circuit Court of Appeals rightly concluded, if a litigant "can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in his complaint . . . the effect of the rule requiring arbitration would, in effect, be nullified." *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990). *See Hilti, Inc. v. Oldach*, 392 F.2d 368, 369 n.2 (1st Cir. 1968) ("If arbitration defenses could be foreclosed simply by adding as a defendant a person not a party to an arbitration agreement, the utility of such agreements would be seriously compromised.").

      The second requirement that must be met before this court can compel arbitration is that the dispute must fall "within the scope of the arbitration agreement." *Zurich American Ins. Co.*, 466 F.3d at 580. The plain language of the Form U4 is very broad in that it covers "any dispute, claim or controversy that may arise . . . ." In other words, the clause does not contain any limitations that might indicate it only applies in the context of a specific type of dispute (e.g., a tort action). Rather, this language is so broad that it likely encompasses any action an employee might attempt to file in court. Plaintiff does not argue otherwise. As the Seventh Circuit noted, "Arbitration clauses containing language such as 'arising out of' are 'extremely broad' and 'necessarily create a presumption of arbitrability.'" *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 810-11 (7th Cir. 2011) (quoting *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999)). *See IBEW Local 2150 v. NextEra Energy Point Beach,*

*LLC*, 762 F.3d 592, 594 (7th Cir. 2014) ("Where the arbitration clause is broad, we presume arbitrability of disputes."). Whereas this is unquestionably a dispute between Plaintiff and his firm, this action is within the scope of the arbitration provision contained within the Form U4. *See Anonymous v. Hendricks*, 994 N.E.2d 324, 329 (Ind. Ct. App. 2013) ("Parties are bound to arbitrate all matters not explicitly excluded that reasonably fit within the language used.").

Lastly, a party seeking to compel arbitration must demonstrate "a refusal by the opposing party to proceed to arbitration." *Zurich American Ins. Co.*, 466 F.3d at 580. This refusal is evident by the mere fact that Plaintiff filed this action, and then reinforced by Plaintiff's briefing on this motion.

Whereas the three elements outlined in *Zurich American Insurance Company* have been satisfied, this court hereby **COMPELS** Plaintiff to arbitrate this matter pursuant to 9 U.S.C. § 4. 466 F.3d at 580.

### C. Proper Disposition of Plaintiff's Action

Defendant argues that the proper course of action in this case is an order compelling arbitration *and* a dismissal pursuant to Rule 12(b)(3) for improper venue. In support, Defendant cites to the Seventh Circuit's decision in *Faulkenberg*. 637 F.3d at 808. However, the *Faulkenberg* court stated, "[A] Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use *when the arbitration clause requires arbitration outside the confines of the district court's district*." *Id.* (emphasis added). Neither party contends that arbitration must occur outside of the Southern District of Indiana. Accordingly, this rule

8

is inapplicable to the instant case. Under the facts of this case, the FAA requires that the court stay, not dismiss, the action:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. *See Shearson/American Express v. McMahon*, 482 U.S. 220, 226 (1987) ("[A] court *must* stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement.") (citation omitted) (emphasis added); *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007) ("For arbitrable issues, a § 3 stay is *mandatory*.") (emphasis added).

The Seventh Circuit explained that a stay "is the normal procedure when an arbitrable issue arises in the course of a federal suit" because, in addition to being required under § 3 of the FAA, it "spare[s] the parties the burden of a second litigation should the arbitrators fail to resolve the entire controversy." *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002). *See Kawasaki Heavy Indus. v. Bombardier Rec. Prods.*, 660 F.3d 988, 997 (7th Cir. 2011) (noting that a district court "retains jurisdiction" under a § 3 stay in order to "effectuate the decision of an arbitrator").

Therefore, Plaintiff's action is hereby **STAYED** pending completion of the arbitration.

**D. Costs**

As a part of its motion to dismiss and compel arbitration, Defendant seeks the costs associated with filing the motion and briefs. Defendant emphasizes that the prevailing party is generally entitled to recover its costs as a matter of course. *Harney v. City of Chicago*, 702 F.3d 916, 927 (7th Cir. 2012). Indeed, Rule 54(d) creates a presumption that the prevailing party's costs, other than attorney's fees, shall be reimbursed by the non-prevailing party. Fed. R. Civ. P. 54(d). *See* 28 U.S.C. § 1920. Therefore, Defendant urges, the court should require Plaintiff to compensate Defendant for its reasonable expenses.

Not so fast.

Under Rule 54(d) and 28 U.S.C. § 1920, "prevailing party" is a legal term of art. *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001). It does not simply refer to a party who wins a motion. In *Buckhannon*, the Supreme Court defined "prevailing party" as "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded." *Id.* (citing Black's Law Dictionary 1145 (7th ed. 1999)). The Court went on to specifically note, "We have only awarded attorney's fees where the plaintiff has received a judgment on the merits or obtained a court-ordered consent decree." *Id.* at 605 (citation omitted). *See Zessar v. Keith*, 536 F.3d 788, 796 (7th Cir. 2008) ("[T]he Supreme Court has repeatedly held that, other than a settlement made enforceable under a consent decree, a final judgment on the merits is the normative judicial act that creates a prevailing party.").

As the Seventh Circuit explained, "victory on a jurisdictional point [that] merely prolongs litigation" does not render the moving party a "prevailing party": "A defendant may persuade the court that the plaintiff has sued too soon, or in the wrong court, or failed to jump through a procedural hoop. Then the dispute will continue later, or elsewhere, and it remains to be seen who will prevail." *Citizens for a Better Env't v. Steel Co.*, 230 F.3d 923, 929-30 (7th Cir. 2000). Put another way, a defendant cannot be deemed the "prevailing party" for simply "put[ting] off the evil day" when it will have to address the plaintiff's claim. *Id.* at 930. *See Linda W. v. Indiana Dep't of Educ.*, 200 F.3d 504, 507 (7th Cir. 1999) ("[T]o prevail in litigation one must win on the merits, and not just score tactical victories in interlocutory skirmishes.").

In this case, Defendant does not qualify as a "prevailing party" for purposes of Rule 54(d). The court herein grants Defendant's motion to compel arbitration, but this victory is in no way an adjudication on the merits of Plaintiff's claims. Moreover, Plaintiff's action shall be stayed, not dismissed. Thus, the court has not foreclosed all relief for Plaintiff. To the contrary, Plaintiff is free to refile his action with the proper arbitration body. This is precisely the type of resolution that the *Citizens for a Better Environment* court warned does not produce a "prevailing party." Whereas this "dispute will continue" in another forum, Defendant's victory today "merely prolongs litigation." 230 F.3d at 929-30. In the words of the Seventh Circuit, Defendant has only succeeded "in a battle," when it needed to "triumph in the war" in order to recover its costs under Rule 54(d). *Id.* at 930. *See Draper, Inc. v. MechoShade Sys.*, No. 1:10-cv-1443, 2013 U.S. Dist. LEXIS 140040, at *2 (S.D. Ind. Sept. 30, 2013) (holding that the defendant

was not a "prevailing party" under 28 U.S.C. § 1920 despite winning a motion to dismiss for lack of personal jurisdiction).

Therefore, the parties must bear their own costs in this action.

## IV. Conclusion

For the foregoing reasons, the court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Compel and Dismiss, and For Costs. (Filing No. 5). Therefore, Plaintiff is **COMPELLED** to arbitrate this matter, Plaintiff's action before this court is **STAYED** pending completion of such arbitration, and the parties shall bear their own costs regarding this motion.

**SO ORDERED** this 17th day of September 2015.

RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.